# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4060

_____

| | | |
|---|---|---|
| Rural Iowa Independent Telephone Association, | * * * | |
| Plaintiff/Appellant, | * * | |
| v. | * * | |
| Iowa Utilities Board, Utilities Division, Department of Commerce, sued as: Iowa Utilities Board; Diane Munns, individually and in her official capacity as a member of the Iowa Utilities Board; Mark O. Lambert, individually and in his official capacity as a member of the Iowa Utilities Board; Elliot Smith, individually and in his official capacity as a member of the Iowa Utilities Board, | * * * * * * * * * * * * | Appeal from the United States District Court for the Southern District of Iowa. |
| Defendants/Appellees, | * * | |
| Qwest Corporation, | * * | |
| Intervenor Defendant/ Appellee. | * * | |

_____

Submitted: October 23, 2003

Filed: April 1, 2004

_____

Before BYE, HANSEN, and MELLOY, Circuit Judges.
_____

BYE, Circuit Judge.

Rural Iowa Independent Telephone Association (RIITA) brought suit in the district court to challenge a ruling by the Iowa Utilities Board (IUB). The district court dismissed for lack of jurisdiction believing the suit was a direct challenge to an order of the Federal Communications Commission (FCC) and therefore within the exclusive jurisdiction of the courts of appeals under the Hobbs Act, 28 U.S.C. § 2342. We reverse and remand for further proceedings.

Qwest Corporation initiated the IUB proceeding that led to the ruling RIITA now challenges in this action. The issues involved in that proceeding are somewhat complicated, and fortunately we need not either address or explain them at length to resolve this appeal. It suffices to note the principal issue was whether Qwest had to pay access charges to another entity not directly involved in this appeal, Iowa Network Services (INS), when Qwest carried certain wireless calls – those originating and terminating within the same major trading area (MTA), or intraMTA calls – over its hard-wired landline networks to a point of interconnection with INS's network. RIITA, an industry association of rural telephone carriers in Iowa, participated in the IUB proceedings because resolution of the dispute between Qwest and INS would affect its members.

In the administrative proceedings, the IUB rendered a decision adverse to RIITA in certain respects. Most notably, the IUB concluded members of RIITA must accept the intraMTA calls at issue even if they receive no compensation for the calls. The IUB, in a directive short of an order, strongly "encouraged" the parties involved to resolve the dispute through negotiations conducted under 47 U.S.C. § 252(a) by reaching an interconnection agreement permitting reciprocal compensation, and if the negotiations proved unsuccessful, through an arbitrated agreement arranged by the

Board pursuant to § 252(b). RIITA filed this action against the IUB challenging its interpretation of the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified in various sections of 47 U.S.C.). Specifically at issue was the IUB's interpretation of part of an FCC ruling entitled <u>Implementation of the Local Competition Provisions of the Telecommunications Act of 1996, Interconnection between Local Carriers and Commercial Mobile Radio Service Providers</u>, First Report and Order, 11 FCC. Rcd 15499 ¶¶ 1035-1045 (1996) (FCC 1996 Local Competition Order), wherein the FCC deemed intraMTA wireless traffic to be local in nature.

RIITA's complaint alleged jurisdiction under 28 U.S.C. § 1331 (general federal question jurisdiction) and claimed the IUB made legal errors in interpreting and applying federal law. Alternatively, the complaint alleged jurisdiction under 47 U.S.C. § 252(e)(6) (providing for federal court review of state agency administrative decisions approving or disapproving interconnection agreements under sections 251 & 252 of the Telecommunications Act) claiming the IUB's decision "eliminate[d] the duty to negotiate under section 251 by requiring local land-line carriers to accept this traffic without agreement and by prohibiting local exchange carriers from blocking telephone traffic that is delivered without the consent of the local exchange carrier." RIITA Complaint at ¶ 8(b), App. at 8.

The IUB filed a motion to dismiss RIITA's action on three alternative grounds: 1) Eleventh Amendment immunity; 2) the Johnson Act, 28 U.S.C. § 1342 (prohibiting federal district courts from "enjoin[ing], suspend[ing] or restrain[ing] the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision"); or 3) the quasi-judicial immunity of the individual members of the IUB. The district court allowed Qwest to intervene in the action. It joined the IUB's motion to dismiss and offered the district court a fourth ground for dismissing

RIITA's suit.  Qwest contended RIITA's suit was a direct challenge to an FCC ruling, over which the courts of appeals had exclusive jurisdiction under the Hobbs Act.

The district court agreed with Qwest's argument and dismissed the suit for lack of jurisdiction.   The district court did not address the alternative grounds raised by the IUB.  RIITA filed this timely appeal of the district court's decision.

We review de novo the district court's determination it lacked subject matter jurisdiction because of the Hobbs Act.  See Carpenter v. Dep't of Transp., 13 F.3d 313, 314 (9th Cir. 1994).

The Hobbs Act provides, in relevant part, that "[t]he court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission." 28 U.S.C. § 2342(1).

We conclude the district court erred in dismissing this action.  RIITA does not directly challenge the *validity* of an FCC order.  Rather, RIITA challenges the IUB's *interpretation* of that order.  RIITA quarrels with what the IUB believes the FCC said in its 1996 Local Competition Order, not with whether the FCC had the requisite authority to say it.  The latter quarrel would be subject to the Hobbs Act, but the former is not because district courts have jurisdiction to determine whether a state administrative agency correctly interprets federal law, in this case the Telecommunications Act and the FCC regulations interpreting the Act.  See Verizon Maryland Inc. v. Public Serv. Comm'n of Maryland, 535 U.S. 635, 643-44 (2002) (recognizing a district court's jurisdiction under 28 U.S.C. § 1331 to address an action challenging a state administrative agency's interpretation of the Telecommunications Act of 1996); see also Pacific Bell v. Pac-West Telecomm, Inc., 325 F.3d 1114, 1125 (9th Cir. 2003) ("The district court must dismiss a complaint if it directly attacks an

FCC order or if it raises only issues that were conclusively decided by the FCC order. Here, neither side seeks to re-adjudicate issues that already have been conclusively determined by the FCC. At most, they merely ask the court to interpret the FCC's rulings, to the extent that they are final and binding, and to determine whether the [IUB's] actions here were consistent with them and with the other authoritative sources of federal law.").

We reverse and remand for further proceedings consistent with this opinion.

_____