# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-3579

———————

| | | |
|---|---|---|
| Rural Iowa Independent Telephone Association, | * * * | |
| Plaintiff - Appellant, | * * | |
| v. | * * | |
| Iowa Utilities Board, Utilities Division, Department of Commerce, sued as: Iowa Utilities Board; Diane Munns, individually and in her official capacity as a member of the Iowa Utilities Board; Mark O. Lambert, individually and in his official capacity as a member of the Iowa Utilities Board; Elliot Smith, individually and an his official capacity as a member of the Iowa Utilities Board, | * * * * * * * * * * * * * | Appeal from the United States District Court for the Southern District of Iowa. |
| Defendants - Appellees, | * * | |
| Qwest Corporation, | * * | |
| Intervenor Defendant - Appellee. | * * | |

———————

Submitted: May 15, 2006
Filed: January 8, 2007

———————

Before BYE, HANSEN, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

The Rural Iowa Independent Telephone Association (RIITA), an industry association comprised of rural telephone carriers, challenges a decision of the Iowa Utilities Board (IUB) regarding wireless phone calls which originate and terminate within the same major trading area (MTA), or intraMTA wireless calls. The IUB determined the rural carriers could not charge Qwest Corporation long-distance access charges when Qwest bundled inbound intraMTA wireless traffic with long-distance traffic before delivering it to the rural carriers. The IUB further determined the rural carriers could not force their customers to use Qwest as an interexchange carrier (IXC) (commonly understood as a long-distance carrier) for outbound intraMTA wireless calls. The district court[1] granted summary judgment upholding the IUB's decision. We affirm.

I

This case exemplifies the tension which can result when the regulatory scheme created by the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified in scattered sections of 47 U.S.C.) (the Act), is applied to wireless phone service. The "two types of charges which one carrier can extract from another for the provision of telecommunication services" are reciprocal compensation, which governs local service, and "access fee[s] charged by common carriers for use in carrying long-distance telecommunications via their infrastructure, or toll services." Iowa Network Servs., Inc. v. Qwest Corp., 363 F.3d 683, 686 (8th Cir. 2004). Under the Act, phone companies are supposed to reach interconnection agreements to determine

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

the charges and amounts paid amongst themselves for local phone calls. See 47 U.S.C. §§ 251(a) & (b) (setting forth the duties to interconnect and to establish reciprocal compensation arrangements), and 252 (outlining the procedures for reaching interconnection agreements). Access charges, on the other hand, are determined by tariffs which carriers file either with the Federal Communications Commission (FCC) (when the charges pertain to purely interstate communications) or the applicable state utility commissions (when the charges pertain to intrastate communications). See Iowa Network, 363 F.3d at 686.

Wireless phone service, and the manner in which wireless calls are transported over existing telephonic infrastructure, does not always "fit neatly," id. at 687, into these two categories of charges. For example, the geographical boundaries of the MTAs associated with wireless calls are not always the same as the boundaries for the local exchange areas associated with traditional local phone service. Consequently, *intra*MTA wireless calls can pass through or over more than one local exchange area and thus be considered *inter*exchange traffic and be delivered with long-distance calls.

Until 1999, Qwest not only delivered intraMTA wireless calls together with long-distance traffic to the rural carriers in Iowa, but also paid access charges to the rural carriers on the intraMTA wireless calls. Three years earlier, however, the FCC had determined intraMTA wireless calls should be considered local in nature rather than long-distance, and therefore be subject to reciprocal compensation rather than access charges. See Implementation of the Local Competition Provisions of the Telecommunications Act of 1996, Interconnection between Local Carriers and Commercial Mobile Radio Service Providers, First Report and Order, 11 F.C.C.R. 15499, ¶¶ 1036, 1043 (1996) (hereinafter Local Competition Order). In April 1999, although Qwest continued to deliver intraMTA wireless calls to the rural carriers bundled together with long-distance traffic, it advised the rural carriers that it planned

to stop paying access charges on such calls pursuant to the FCC's Local Competition Order.

When the rural carriers disagreed with Qwest's position on the continued payment of access charges for intraMTA wireless traffic, Qwest filed a petition with the IUB for a declaratory order regarding its obligations, as a transiting carrier, with respect to wireless traffic exchanged between cellular phone companies and the rural carriers using Qwest's network. The IUB opened a docket on Qwest's petition, allowed a number of intervenors to join the action, and held extensive proceedings including a nine-day evidentiary hearing. Following these proceedings, the IUB issued a "Proposed Decision and Order"[2] concluding the intraMTA wireless traffic at issue was local in nature, and Qwest was not required to pay access charges to the rural carriers. The IUB indicated cellular phone companies and rural carriers should negotiate interconnection agreements amongst themselves for reciprocal compensation.

RIITA filed an administrative appeal of the proposed decision challenging the conclusion that Qwest was not required to pay access charges for intraMTA wireless traffic. Another issue raised on appeal was whether the proposed decision failed to recognize the "right" of the rural carriers' customers to dial "0" or "1" prior to dialing an intraMTA wireless number, thereby routing the outbound call through an IXC (long-distance carrier) in order to complete the call, and triggering access charges. The final decision issued by the IUB reaffirmed that Qwest was not responsible for access charges for intraMTA wireless traffic. With respect to a customer's "right" to dial an outbound local wireless call as a long-distance call, the IUB said:

---

[2]Under the statutes and rules governing the IUB, a proposed decision issued by the presiding officer becomes final unless a party files a timely administrative appeal. See Iowa Code § 17A.15(3).

-4-

[This] argument assumes that customers should pay [access] charges in order to make local calls to wireless customers. However, it is obvious that if the customers were given the choice between making a local call to a wireless customer or making a toll call to the same wireless customer, most customers would likely waive their "right" to make a toll call using their preferred interexchange carrier in favor of making the same call as a local one, with no additional charges. The Board will affirm the Proposed Decision and Order on this issue and direct the [rural carriers] to allow their customers to dial these local calls as local calls.

Appellant App. at 87.

RIITA filed an action against the IUB in federal district court challenging this final administrative decision. After the district court allowed Qwest to intervene, Qwest argued the case should be dismissed because RIITA was directly challenging an FCC ruling, and therefore its suit should be brought in the first instance in a court of appeals pursuant to the Hobbs Act, 28 U.S.C. § 2342. The district court agreed and dismissed the suit. The case then took a detour through our court to determine whether the Hobbs Act deprived the district court of jurisdiction to review the IUB's decision. See Rural Iowa Indep. Tel. Ass'n v. Iowa Utils. Bd., 362 F.3d 1027 (8th Cir. 2004). We disagreed with the conclusion that RIITA's suit directly challenged an FCC ruling, and remanded to the district court to determine whether the IUB's decision was consistent with the FCC's rulings and other federal law. Id. at 1030.

On remand, the district court determined the IUB's decision did not violate federal law. Specifically, the district court determined the IUB was within its authority to require the rural carriers to engage in the negotiation/arbitration process set forth in sections 251 and 252 of the Act. Further, the district court held the IUB was within its authority to determine a transit carrier, like Qwest, should not have to pay access charges for intraMTA wireless traffic.

RIITA filed a timely appeal. On appeal, RIITA contends the district court erred in affirming the IUB's decision regarding inbound wireless traffic claiming the "core issue is not whether the [carriers] can charge wireless carriers for local calls, but whether they can charge Qwest for forcing the traffic on them." RIITA's Br. at 18. RIITA further contends the district court failed to address the IUB's error in holding rural carriers cannot use IXCs for outbound wireless traffic.

III

We review de novo whether the IUB's decision complied with federal law. Connect Commc'ns Corp. v. Sw. Bell Tel., L.P., 467 F.3d 703, 708 (8th Cir. 2006).

RIITA first argues rural carriers should be allowed to collect access charges from Qwest for inbound intraMTA wireless calls, and the IUB could not require the rural carriers to negotiate reciprocal compensation with wireless carriers. We disagree, noting we have already upheld the sum and substance of the IUB's decision in the related case of Iowa Network Services, Inc. v. Qwest Corp., 466 F.3d 1091 (8th Cir. 2006) (Iowa Network II).

Iowa Network II dealt with the same dispute over intraMTA calls, but between Qwest and Iowa Network Services (INS). Like Qwest, INS acted as a transiting carrier for the inbound intraMTA calls (i.e., when a wireless customer calls a rural carrier's customer, the wireless carrier delivers the call to Qwest's network, which in turn delivers the call to INS's network, which in turn delivers the call to the rural carrier for termination at its customer's phone). The dispute between INS and Qwest was also over access charges, and involved two of the same basic issues here: 1) whether the IUB erred in determining the calls were local calls to which access charges should not apply, and 2) whether the IUB was within its authority to require the parties involved to seek reciprocal compensation for payment of the calls via the negotiation/arbitration process set forth in sections 251 and 252 of the Act. With

respect to both of those issues, we held the IUB acted within its authority and did not violate federal law.  See Iowa Network II, 466 F.3d at 1096, 1097-98.

On this point, RIITA makes only one additional argument – not directly addressed in Iowa Network II – that merits discussion.  RIITA contends the FCC's order in In the Matter of Developing a Unified Intercarrier Compensation Regime, T-Mobile et al., 20 F.C.C.R. 4855 (2005) (hereinafter T-Mobile) allows a carrier to charge access fees for intraMTA traffic, and thus the IUB's decision prohibiting such charges is inconsistent with federal law.  We disagree.

The primary import of T-Mobile was to amend an FCC rule to prohibit local exchange carriers (like RIITA's members) from collecting payment for wireless intraMTA calls via access charges.   The FCC did, however, state it was not per se unlawful for parties terminating wireless calls to collect charges from wireless carriers through the use of tariffs (i.e., access charges), as long as such tariffs did not conflict with an existing interconnection agreement.  T-Mobile, 20 F.C.C.R 4855 at ¶ 9.  RIITA relies upon that portion of the T-Mobile order to contend the FCC specifically affirmed the use of tariffs by companies receiving local wireless traffic.

T-Mobile is distinguishable from this case.  First, it addressed disputes which were directly between local exchange carriers and wireless carriers.  Here, Qwest merely acts as a conduit to facilitate what is essentially a transaction between a wireless carrier and a local exchange carrier.  The rural carriers want Qwest, a transiting carrier, to pay for the calls in question instead of negotiating payment directly with the originating carriers.  Thus, T-Mobile does not stand for the proposition RIITA espouses, i.e., that terminating carriers can make *transiting* carriers pay access charges for intraMTA calls instead of seeking payment directly from the originating carriers.

In addition, the FCC limited the holding in T-Mobile, indicating it did not apply to tariffs that "purport[] to apply . . . even when a valid interconnection agreement *could be* in place." Id. at ¶ 13 n.52 (emphasis added) (internal quotations and citation omitted). Thus, T-Mobile actually reaffirms the FCC's "clear preference for contractual arrangements for non-access" (i.e., intraMTA traffic), id. at ¶ 14, precisely what the IUB required RIITA members to seek in this case. See Iowa Network II, 466 F.3d at 1098 (noting the FCC's "stated desire to move away from tariffs and toward negotiation and arbitration in order to facilitate market competition," as reflected in the T-Mobile order). Because nothing prevents the rural carriers from having in place valid interconnection agreement between themselves and the originating wireless carriers, T-Mobile does not apply.

Finally, although the FCC indicated tariffs imposed by a terminating carrier upon an originating carrier were not "per se" unlawful, nothing in T-Mobile *requires* state public utility commissions to allow tariffs, or *prevents* state public utility commissions from doing what the IUB did here, that is, requiring terminating carriers to negotiate interconnection agreements directly with originating wireless carriers. As a consequence, we reiterate what we said in Iowa Network II, and once again hold that the IUB acted within its authority and did not violate federal law.

IV

RIITA next argues the IUB erred when it prohibited the rural carriers from using Qwest as an IXC for outbound intraMTA traffic. Some additional background will be helpful in understanding this issue. As we previously noted, carriers compensate one another for local calls with reciprocal compensation agreements. But because the originating and terminating traffic between two carriers tends to balance itself out (i.e., the same number of Qwest customers originate local phone calls for termination to Verizon customers as Verizon customers originate for termination to Qwest customers, and the cumulative length of the phone calls terminated by either

carrier is about the same), there would normally be very little difference in the payment exchanged between two carriers. For this reason, the IUB adopted a rule called "mutual exchange of traffic" by which each carrier bills its own customers for local traffic and keeps the resulting revenue. This type of agreement is referred to under the Act as a "bill-and-keep" agreement. See 47 U.S.C. § 252(d)(2)(B)(i). In Iowa, only when one carrier can show a significant imbalance in the local traffic flow for at least six months does one carrier actually have to make payment to another carrier under a reciprocal compensation agreement. See Iowa Admin. Code 38.6(2).

In the proceedings before the IUB, the Iowa Telecommunications Association (ITA) argued the "bill-and-keep" method of payment should not apply to local wireless traffic. The ITA contended the rural carriers should be able to charge any carrier delivering calls from wireless carriers' customers because the traffic was not in balance. The IUB rejected that position, noting the record contained very little evidence of a traffic imbalance. The IUB further noted what evidence there was of a traffic imbalance was skewed by the fact the rural carriers often required that outbound intraMTA traffic be treated as long distance calls. The rural carriers accomplished this by forcing their own customers to dial a "0" or "1" at the beginning of an intraMTA wireless call, thus routing the call to an IXC (long-distance carrier). This practice decreased the number of outbound local wireless calls. The IUB recognized that by forcing their customers to initiate calls in this manner, the rural carriers got a double benefit – not only would there be fewer outbound calls to balance inbound traffic under a reciprocal compensation agreement, but the calls would then be carried by an IXC and subject to access charges.

In claiming the IUB erred on the issue of outbound traffic, RIITA is merely attempting to perpetuate its members' practice of treating local wireless traffic as long-distance traffic subject to access charges. If the rural carriers can force their customers to dial a "0" or "1" to complete an intraMTA call, they can continue to force carriers like Qwest to pay access charges for local wireless traffic. As a

consequence, we conclude the IUB acted within its authority when it directed the rural carriers to allow their customers to dial intraMTA calls as local calls.

V

For the reasons stated, we affirm the district court's grant of summary judgment and uphold the IUB's decision.

_____