# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2401

_____

Alma Communications Company,
doing business as Alma Telephone
Company; Chariton Valley Telephone
Company; Mid-Missouri Telephone
Company; Northeast Missouri Rural
Telephone Company,

      Plaintiffs - Appellants,

      v.

Missouri Public Service Commission;
T-Mobile USA,

      Defendants - Appellees.

\* Appeal from the United States
\* District Court for the Western
\* District of Missouri.

_____

Submitted: December 14, 2006
Filed: June 11, 2007

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

This case presents the question of whether land-line telephone calls to cell phones within the same locale are treated as local calls or long-distance calls by the

FCC. The district court,[1] reviewing a decision of the Missouri Public Service Commission, held that the plain language of the FCC's regulation required such calls to be treated as local calls, even when such calls were routed through a long-distance provider. The result of that conclusion is that the local telephone company and the cell-phone provider must share "reciprocal compensation" for such calls, Alma Communications Co. v. Missouri Pub. Serv. Co., No. 05-4358-CV-C-NKL, 2006 WL 1382348 (W.D. Mo. May 19, 2006). Alma Communications Company and several other local telephone companies from rural Missouri,[2] whom we will refer to collectively as "Alma" for simplicity's sake, contend that such calls should be treated as long-distance calls if they are routed through a long-distance carrier. We affirm the judgment of the district court.

I.

**Background.**

We borrow heavily from the background supplied by the district court, which took the alphabet soup served up by the parties and rendered it into serviceable English. The legal landscape of this case is the bifurcated local/long-distance system for allocating costs between telephone service providers; this controversy, as others we have entertained, arises because cell-phone providers do not fit neatly into the bifurcated system. See Rural Iowa Indep. Tel. Ass'n v. Iowa Util. Bd., 476 F.3d 572, 574 (8th Cir. 2007); Iowa Network Servs., Inc. v. Qwest, 363 F.3d 683, 687 (8th Cir. 2004) (Iowa Network Services I).

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

[2] Chariton Valley Telephone Corporation, Mid-Missouri Telephone Company, and Northeast Missouri Rural Telephone Company.

Alma is a "local exchange carrier" or "LEC," in other words, a local telephone company providing traditional land-line phone services. Local exchange carriers usually serve a small local service area covering a few local exchanges (exchanges being designated by the first three numbers of a seven-digit phone number). More specifically, Alma is a rural incumbent local exchange carrier. "Incumbent" means that it was the telephone company in possession of its area at the time that the Telecommunications Act of 1996 opened up local service to competition.

Before the Telecommunications Act of 1996, all customers in a local exchange carrier's geographical area would be serviced by one local exchange carrier, which connected the caller and recipient of a local call. The 1996 Act opened local service areas up to competition, so that different carriers might serve caller and recipient even in the same exchange area. Iowa Network Services I, 363 F.3d at 685-86. Land-line calls placed and received within a "local service area" are local calls, as opposed to "toll" or "long-distance" calls. Id. at 686. Local exchange carriers serving the same area may have a "direct" connection with each other, which means that there is an actual physical point of interconnection between the carriers' networks,[3] WWC License, LLC v. Boyle, 459 F.3d 880, 884 (8th Cir. 2006) (distinguishing direct from indirect connections). When two local exchange carriers are involved in a local call, both incur costs for the call, since the caller's carrier has to originate the call, but the receiver's carrier has to transport the call from the point of that carrier's connection with the originating carrier's network and to terminate the call.[4] The carrier for the party originating the call is compensated by its customer, the caller. Atlas Tel. Co. v. Oklahoma Corp. Comm'n, 400 F.3d 1256, 1260 (10th Cir. 2005).

---

[3]The record suggests that there may be other, more complicated ways to connect local land-line to land-line calls, but they are not at issue here.

[4]"Termination" is the "switching of the telecommunications traffic at the terminating carrier's end office switch, or equivalent facility, and delivery of such traffic to the called party's premises." 47 C.F.R. § 51.701(d).

In the 1996 Act, Congress required the carriers to enter into "reciprocal compensation arrangements," whereby the carrier for the caller would compensate the recipient's carrier for its costs in transporting and terminating local calls. See 47 U.S.C. § 251(b) (enumerating duties of local exchange carriers, including "[t]he duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications").

When a land-line customer calls a land-line number outside of the local service area, there may be no direct connection between the local exchange carriers involved. In that case, the call does not go directly from one local exchange carrier to the other, but is routed through an intermediary long-distance carrier (known as an "interexchange carrier" or "IXC"). The customer chooses a long-distance carrier and pays it for long-distance service. However, the long-distance carrier cannot complete the calls by itself. A local exchange carrier has to originate the call and another one has to terminate it. The long-distance provider pays the local exchange carriers "access compensation" for their services in connecting the call.

The distinction between local calls (funded by reciprocal compensation) and long-distance (funded by access compensation) becomes less clear when one of the parties to the call is using a cell phone instead of a land line. Cell-phone service is provided by a "commercial mobile radio service," instead of a local exchange carrier.[5] Rather than the "local service area" that defines the boundaries for local calls on land lines, a "major trading area," which is a larger area, defines which cell-phone calls are local. Iowa Network Servs. I, 363 F.3d at 687 (citing 47 C.F.R. § 51.701(b)(2)); Rural Iowa Indep. Tel. Ass'n , 476 F.3d at 574.

---

[5]The term "commercial mobile radio service" includes providers of many services other than cell-phone service. See In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996 and In the Matter of Interconnection between Local Exchange Carriers and Commercial Mobile Radio Service Providers,, 11 F.C.C.R . 15499, 15517 (1996).

When the local exchange carrier and the cell-phone provider's networks are connected directly, then the costs are handled by a reciprocal compensation agreement between the local exchange company and the wireless company, just as if the call were a traditional local call. On the other hand, if the land-line customer calls a cell-phone customer situated outside the major trading area, the call will be routed through a long-distance carrier and the costs will be covered by access compensation.

However, when the cell-phone provider chooses not to connect directly with the local exchange carrier's network, even a call from the same major trading area– and for that matter, even a call from the same local service area, has to go through an intermediary. The cell-phone provider is thus "indirectly interconnected" with the local exchange carrier's network. The intermediary carrier does not have to be a long-distance carrier, however, since large local exchange carriers, such as Southwestern Bell Telephone, can act as "transiting carriers." In fact, cell-phone companies usually do not choose to connect directly with rural local exchange carriers, because the volume of business does not make it economically advantageous for the cell-phone company to do so. The question in this case is whether the compensation model for such calls should be governed by the fact that both parties to the call are situated within the same major trading area or whether it should be governed by the fact that the call was routed through a long-distance carrier.

**This litigation.**

T-Mobile is a cell-phone company which does not have a direct connection to Alma's networks, having chosen instead to directly interconnect with Southwestern Bell Telephone, a large incumbent local exchange carrier, in Kansas City. Southwestern Bell is directly connected with Alma. When a call is placed from T-Mobile's cell phones to one of Alma's land-line customers, T-Mobile connects the call either through Southwestern Bell, which acts as a transiting carrier, or through a long-distance carrier; in either case, T-Mobile pays the intermediary carrier. When the cell-phone to land-line traffic is carried through a transiting carrier, T-Mobile pays Alma

reciprocal compensation. When the cell-phone to land-line traffic goes through an interexchange carrier, T-Mobile pays the interexchange carrier both for the interexchange carrier's services and for the fee the terminating local exchange carrier charges to deliver the call.

The dispute in this case concerns calls going in the other direction, from a land line to a cell phone. For what Alma calls "historical and regulatory reasons," Alma does not send any of its calls to T-Mobile through a transiting carrier, but instead sends all traffic bound for T-Mobile through a long-distance carrier. Even calls to a T-Mobile phone that originate and terminate within Alma's local service area are routed through a long-distance carrier, with the result that Alma's customers have to dial 1+ to reach even a T-Mobile customer next door.

Alma insists that it has no choice but to send T-Mobile's calls through a long-distance carrier and that those calls are therefore inherently long-distance in nature. Alma introduced evidence before the arbitrator that it would be legally and technically problematic and "a major change" from how such calls are currently handled in Missouri for Alma to deliver such calls without going through an interexchange carrier. T-Mobile introduced evidence before the arbitrator that it would be possible for the local exchange carriers to route calls to T-Mobile without sending it to a long-distance provider.[6] Alma's witnesses testified that the cell-phone companies ought

_____

[6] T-Mobile's testimony before the state commission was that the local exchange carriers made a business decision to hand land-line to cell-phone calls to an interexchange carrier by requiring their customers to dial 1+. T-Mobile's witness Billy Pruitt testified:

> T-Mobile understands that the LECs [local exchange carriers] deliver one-plus traffic to IXCs [interexchange carriers] because they do not have CMRS [commercial mobile radio service] provider NPA/NXXs [codes identifying geographic area and central office] identified in their tariffs and loaded into their switches. However, this NPA/NXX [codes identifying geographic area and central office] information is contained

-6-

to eliminate the problem by "negotiating an interconnection agreement with us and getting local numbers." T-Mobile answers that it would be economically wasteful for each cell-phone carrier to connect directly to each rural exchange.[7] Moreover, there was testimony that even if T-Mobile were to establish a direct connection with the respective local exchange carriers, the local exchange carriers would only be able to connect calls directly to numbers assigned within their local service area, not throughout the entire major trading area.

> in the LERG [local exchange rating guide] and could be loaded by the LECs [local exchange carriers] into their switches if they chose to do so. They have simply chosen not to do that, at least to date. There is nothing in the Act or the rules that mandate that the current legacy landline processes be applied to NPA/NXXs [codes identifying geographic area and central office] associated with CMRS [commercial mobile radio service] calls. The LECs [local exchange carriers] are consciously handing CMRS [commercial mobile radio service]-directed traffic to an IXC [interexchange carrier] and treating it as toll traffic <u>under a traditional wireline view,</u> resulting in 1) preservation of the LECs' [local exchange carriers'] access charge revenue stream and 2) avoidance of paying CMRS [commercial mobile radio service] providers the termination charges required under the reciprocal compensation rules.

(Emphasis in original) (our translations of Pruitt's acronyms in brackets). Later, he said: "Could the RLECs [rural local exchange carriers] rewrite their switch translations to prevent intraMTA [intra-major trading area] calls from being handed off to IXCs [interexchange carriers]? The answer is certainly yes." At the hearing before the state commission, he said that the local exchange carriers could handle calls to cell phones by contracting with an interexchange carrier to handle them under a wholesale services arrangement or by handing them off to a transit carrier such as Southwestern Bell.

[7]Billy Pruitt further testified: "It would not be economically feasible for T-Mobile to purchase direct connections to each of these RLECs [rural local exchange carriers]. The cost of a trunk to each of these companies would likely far exceed the revenue generated for either part of the facility . . . . The only economically rational means of interconnecting with these RLECs [rural local exchange carriers] is indirectly through a transit provider."

In short, Alma would like land-line to cell-phone calls to be treated as long-distance calls, so that Alma would not have to pay reciprocal compensation to T-Mobile and so Alma can collect access compensation from the long-distance providers. T-Mobile, on the other hand, pays Alma reciprocal compensation for cell-phone to land-line calls and it wants to be paid symmetrical reciprocal compensation by Alma for its role in terminating intra-major trading area calls placed by Alma's customers. T-Mobile would not benefit from such calls being called long-distance, since it has not been able to get the long-distance carriers to pay it access compensation.

Alma was required by law to negotiate an interconnection agreement with T-Mobile, pursuant to 47 U.S.C. § 251(c)(1). The parties could not agree on how to characterize all the calls on which they cooperated, and in particular, the parties could not agree on whether land-line to cell calls within a major trading area should be covered by reciprocal compensation. Alma filed a petition for arbitration with the Missouri Public Service Commission in accordance with 47 U.S.C. § 252(b), which provides that the parties in interconnection negotiations may submit unresolved issues to arbitration by the state commission. The dispute was arbitrated, and the arbitrator interpreted the FCC regulation, 47 C.F.R. § 51.701, to require Alma to compensate T-Mobile for costs incurred in transporting and terminating land-line to cell-phone calls placed to cell phones within the same major trading area, even if those calls were routed through a long-distance carrier.

The Commission affirmed the Arbitrator's decision. In the Matter of the Petition of Alma Telephone Co., No. IO-2005-0468, slip op. at 15-17 (Mo. Pub. Serv. Comm. Oct. 12, 2005). Alma filed suit in the district court for declaratory relief against T-Mobile and the Missouri Public Service Commission. The district court granted summary judgment in favor of T-Mobile. Alma Communications Co., 2006 WL at *9.

-8-

II.

The district court reviews the state commission's decision pursuant to 47 U.S.C. § 252(e)(6), reviewing its interpretations of federal law de novo, but upholding its factual conclusions unless they are arbitrary and capricious. ACE Tel. Ass'n v. Koppendrayer, 432 F.3d 876, 878 (8th Cir. 2005). We review the district court's decision de novo, applying the same standards the district court is required to employ. Id. In our interpretation of the Telecommunications Act, we defer to existing interpretations by the FCC, which Congress authorized to interpret and administer the Act. WWC License, LLC v. Boyle, 459 F.3d 880, 890 (8th Cir. 2006).

The arbitrator considered the issue before him to be strictly a legal issue and did not resolve any factual questions in deciding the issue. Our review of the state commission's decision in this case thus involves a legal issue, which we review de novo.

III.

In its brief on appeal, Alma argues that FCC rules governing reciprocal compensation do not include calls made from a local exchange carrier's customer to a cell phone that are routed through a long-distance provider. Alma argues that 47 C.F.R. § 51.701, the regulation that mandates the use of transport and termination (reciprocal) pricing, does not include traffic involving a long-distance carrier.[8] This

---

[8]Section 51.701 defines "telecommunications traffic" as including (1) traffic exchanged between a local exchange provider and a telecommunications provider other than a commercial mobile radio service provider, except for traffic that is interstate or intrastate exchange access, information access, or exchange services for such access; and (2) traffic "exchanged between" a local exchange provider and a Commercial Mobile Radio Service provider that, at the beginning of the call, originates and terminates within the same major trading area. See 47 C.F.R. § 51.701(b). The second paragraph, 47 C.F.R. § 51.701(b)(2), announces flatly that

argument was squarely rejected by the Tenth Circuit in <u>Atlas Telephone Co. v. Oklahoma Corp. Commission</u>, 400 F.3d 1256, 1264-68 (10th Cir. 2005). The Tenth Circuit held that the language in section 701 making the geographic major trading area the determining factor in deciding whether a call would be local or long-distance is "clear, unambiguous, and on its face admits of no exceptions." <u>Id.</u> at 1264. "Nothing in the text of these provisions provides support for RTC's contention that reciprocal compensation requirements do not apply when traffic is transported on an IXC [interexchange carrier] network." <u>Id.</u> Alma contends that <u>Atlas</u> was wrongly decided. We need not rehearse Alma's arguments attacking the <u>Atlas</u> decision, for our circuit has now adopted its reasoning in three different cases.

After briefing in this case, our court rendered its second decision in <u>Iowa Network Services, Inc. v. Qwest Corp.</u>, 466 F.3d 1091 (8th Cir. 2006) (<u>Iowa Network Sevices II</u>), <u>cert. denied</u>, No. 06-1217, 2007 WL 698901 (U.S. May 14, 2007), in which we held that an intermediary carrier was not required to pay access charges for cell-phone to land-line calls originating and terminating within a major trading area. <u>See</u> <u>Iowa Network Servs. v. Qwest Corp.</u>, 363 F.3d 683, 687 (8th Cir. 2004) (<u>Iowa Network Services I</u>) (facts involve "traffic which occurs when a cell-phone user located within the Des Moines MTA [major trading area] initiates a call to a land-line customer of one of the Iowa independent LEC's [local exchange carriers], and the cell-phone user's CMRS [commercial mobile radio service] provider uses Qwest's network to transport the call to [the local exchange carrier's] network for final termination on the LEC's [local exchange carrier's] infrastructure to the called party."). We relied on the FCC's Local Competition Order, <u>In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996 and In the Matter of Interconnection between Local Exchange Carriers and Commercial Mobile Radio Service Providers</u>, 11 F.C.C.R. 15499 (1996), to conclude that cell-phone calls within

---

calls involving a cell phone in which the caller and receiver are in the same major trading area when the call is placed are covered by the transport and termination pricing regulations.

a major trading area are "local" calls subject to reciprocal compensation arrangements, not "long-distance" calls subject to access compensation. 466 F.3d at 1096-97. We further upheld the state commission's order requiring the local exchange carriers and the intermediary to enter into reciprocal compensation negotiations. Id. at 1097-98. Iowa Network Services II thus explodes the idea that a cell-phone call made and received within a major trading area is transformed into a long-distance call simply by being routed through a long-distance carrier.

In Rural Iowa Independent Telephone Association v. Iowa Utilities Board, 476 F.3d 572, 576-77 (8th Cir. 2007), we further reinforced the principle that cell-phone calls made and received within the major trading area are subject to reciprocal compensation, rather than access compensation. We relied on Iowa Network Services II to uphold a state commission's order that rural local exchange carriers were not entitled to access compensation from a transiting carrier that connected calls from a cell-phone to a land-line. The state commission had also ordered "requiring terminating carriers [i.e., local exchange carriers] to negotiate interconnection agreements [for reciprocal compensation] directly with originating wireless carriers." Id. at 577; see id. at 575 (order was specifically to negotiate reciprocal compensation arrangement). We held this order was within the state commission's authority. Id. at 577. Finally, the state commission had ruled that the local exchange carriers were not entitled to route land-line to cell-phone traffic through a long-distance carrier because allowing them to do so would discourage land-line customers from calling cell phones and thus interfere with the symmetry of the cell-phone/land-line traffic; we upheld this aspect of the order as well. Id. at 577-78.

At oral argument, Alma distinguished Iowa Network Services II on the ground that it involved cell-phone to land-line traffic, rather than land-line to cell-phone traffic. Alma has thus retreated from its original argument that any involvement by an interexchange carrier would make a call long-distance and now advances a modified argument that origination by the long-distance carrier or 1+ dialing makes a call long-distance. According to Alma, the reason this makes a difference is that in

the case of land-line to cell-phone calls placed by Alma's customers, the caller has to dial 1+ to initiate the call, which means that the long-distance provider of the consumer's choice, rather than the local exchange carrier, bills the consumer. Alma contends that if the long-distance provider bills the consumer, the consumer is the customer of the long-distance provider, not the local exchange company, and the local exchange company has no obligation to pay reciprocal compensation. Alma argues that calls going from cell phones to land lines are different because T-Mobile is not obliged to let its customers choose their long-distance carrier or to hand off long-distance calls to the customer's chosen carrier. Therefore, even though T-Mobile pays Alma reciprocal compensation for cell-phone to land-line calls, Alma contends that it should not pay T-Mobile such compensation for traffic going in the opposite direction. This argument depends on the factual proposition that calls to a cell phone from a local exchange carrier's network have to be initiated by dialing 1+, a proposition which has been rejected by the state commission order we recently upheld in Rural Iowa Independent Telephone Association, 476 F.3d at 578 ("[W]e conclude the IUB acted within its authority when it directed the rural carriers to allow their customers to dial intraMTA [major trading area] calls as local calls.").

At any rate, we cannot accept Alma's argument that intra-major trading area land-line to cell-phone calls are not subject to reciprocal compensation, for we relied on Atlas to reject an analogous argument in WWC License. There, a cell-phone provider sought a ruling that the incumbent local exchange carrier was obliged to provide local dialing parity for land-line to cell-phone calls. Local dialing parity means that customers can make local calls dialing the same number of digits, no matter who is the recipient's service provider. 47 C.F.R. § 51.207. Local dialing parity, like reciprocal compensation, is one of the obligations imposed on local exchange carriers by Title 47 U.S.C. § 251(b). The local exchange carrier in WWC License, like Alma in this case, argued that because the cell-phone provider had not directly connected to the local exchange carrier's network, it was necessary for land-line to cell-phone calls to be routed through an interexchange carrier. In WWC

License, the indirect connection meant that the only way to connect land-line customers to cell customers using the local exchange carrier's existing equipment was to require customers to dial 1+ the ten-digit number. The state commission had held that because the cell-phone provider had chosen not to connect directly with the local exchange carrier, thereby necessitating the involvement of an intermediary carrier to complete local calls, the local exchange carrier was not obliged to provide local dialing parity. Id. at 889. We held that the state commission had erred in a question of federal law, for the duty to provide local dialing parity was not conditioned on whether the caller's local exchange carrier would have to route the call through an interexchange service. Id. at 889-93. We rejected fact-bound arguments about the technical feasibility of complying with the duties imposed on local exchange carriers by 47 U.S.C. § 251(b), even though we acknowledged that the effect of the holding was to impose costs on the local exchange carrier as a result of the cell-phone carrier's decision not to connect directly with the local exchange carrier, see id. at 889. We said, "The statutory duties under examination are not limited with reference to technical feasibility or expense." Id. at 893.

Our holding in WWC License is particularly relevant here because we reasoned that the duty of dialing parity was analogous to the duty of reciprocal compensation.[9] We therefore relied on Atlas's holding that the FCC had made the major trading area the "local area for the purpose of reciprocal compensation," rather than making direct connection the criterion for deciding what calls would be treated as local. Id. at 891-92.

---

[9]In fact, the issue of whether such calls triggered the reciprocal compensation obligation was at issue in the district court in WWC License. The district court held that calls within the major trading area were subject to reciprocal compensation, regardless of whether they had to be routed through the interexchange carrier. Neither party appealed that ruling. See Boyle, 459 F.3d at 888 n.6.

Our reliance on <u>Atlas</u> in <u>WWC License</u> compels us to reject Alma's argument that the involvement of an interexchange carrier at the originating end of the call means that the call cannot be subject to reciprocal compensation.

Accordingly, we are bound by circuit precedent to hold that calls from a land line to a cell phone placed and received within the same major trading area are local calls, subject to the reciprocal compensation arrangements ordained by the 1996 Telecommunications Act, 47 U.S.C. § 251(b)(5).  We affirm the judgment of the district court.

_____